UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| WELILEH OLIVAR,<br><br>               Plaintiff,<br><br>   v.<br><br>NANCY A BERRYHILL, Acting Commissioner of Social Security,<br><br>               Defendant. | CASE NO. 2:17-CV-00657-DWC<br><br>ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS |

     Plaintiff Welileh Olivar filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of Defendant's denial of Plaintiff's application for disability insurance benefits ("DIB"). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. *See* Dkt. 6.

     After considering the record, the Court concludes the Administrative Law Judge ("ALJ") erred when she failed to provide specific and legitimate reasons, supported by substantial evidence, for giving limited weight to the medical opinion evidence. Had the ALJ properly considered the medical opinion evidence, the residual functional capacity ("RFC") may have

included additional limitations. The ALJ's error is therefore not harmless, and this matter is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner of Social Security ("Commissioner") for further proceedings consistent with this Order.

## FACTUAL AND PROCEDURAL HISTORY

On September 4, 2013, Plaintiff filed an application for DIB, alleging disability as of January 8, 2013. *See* Dkt. 9, Administrative Record ("AR") 12. The application was denied upon initial administrative review and on reconsideration. *See* AR 12. A hearing was held before ALJ Kimberly Boyce on August 10, 2015. AR 27-85. In a decision dated September 25, 2015, the ALJ determined Plaintiff to be not disabled. AR 12-22. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council, making the ALJ's decision the final decision of the Commissioner. *See* AR 1-3; 20 C.F.R. § 404.981, § 416.1481.

In Plaintiff's Opening Brief, Plaintiff maintains the ALJ erred by: (1) failing to provide specific and legitimate reasons to reject the opinions of treating physician, Dr. Thomas Patamia, M.D., and examining physician, Dr. Alicia Jorgenson, M.D.; (2) assigning improper weight to the opinion of non-examining medical source, Dr. John Robinson, Ph.D.; (3) failing to provide clear and convincing reasons to reject Plaintiff's testimony; and (4) failing to meet her burden at Step Five of the sequential evaluation process. Dkt. 11, pp. 1, 3-17.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

# DISCUSSION

## I. Whether the ALJ properly considered the medical opinion evidence.

Plaintiff first argues the ALJ failed to provide specific and legitimate reasons, supported by substantial evidence, to reject evidence from Plaintiff's (1) treating behavioral health physician, Dr. Patamia; and (2) examining physician, Dr. Jorgenson. Dkt. 11, pp. 3-11.

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). When a treating or examining physician's opinion is contradicted, the opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

### A. Dr. Patamia

Plaintiff maintains the ALJ erred when she rejected the limitations assessed by treating physician, Dr. Patamia. Dkt. 11, pp. 3-9.

Dr. Patamia provided Plaintiff with behavioral mental health treatment. *See* AR 372-81, 387-88 (treatment notes); *see also* AR 448-50, 464-66 (mental health reports). Dr. Patamia opined Plaintiff has severe social anxiety and severe body dysmorphic disorder, and exhibits "severe avoidance behaviors due to intense anxiety [and] panic attacks." AR 450, 465.

Consequently, Dr. Patamia opined Plaintiff has limitations in several areas of work-related activities, including a serious limitation in her ability to sustain an ordinary routine without special supervision. AR 449, 465. Dr. Patamia further found Plaintiff "[u]nable to meet competitive standards" in her ability to work in coordination with or proximity to others, perform at a consistent pace without unreasonable rest periods, set realistic goals or make plans independently, and interact appropriately with the general public. AR 449-50, 465-66. Dr. Patamia also determined Plaintiff had "[n]o useful ability to function" in her punctuality and ability to maintain regular attendance, complete a normal workday and workweek without interruptions from psychological symptoms, and deal with normal work stress. AR 449, 465. Dr. Patamia concluded Plaintiff would miss more than four days per month, on average, due to her impairments or treatment. AR 450, 466.

After summarizing Dr. Patamia's findings, the ALJ stated:

> (1) [Dr. Patamia's] limitations as opined are extreme compared the rest of the claimant's self-reported activities, including going to the park with her husband and her son, preparing meals for her family "2-3 times during weekdays 1-2 times during weekends" (5E/3), doing house chores "1-2 hours, 2x a week" (5E/3), and having the "longer term goal to go back to school to become a dental assistant/ hygienist." (4A/4) (2) Dr. Patamia's opinions in the one-time evaluation form are accorded limited weight compared to his observations and medical findings recorded in his clinic notes. (3) The diagnosis of body [dysmorphic] disorder noted by Dr. Patamia was based on the claimant's complaints made at a visit for the purpose of determining SSI eligibility many months after the last visit for treatment.

AR 19 (numbering added).

All three of the ALJ's reasons for rejecting Dr. Patamia's opinion were error because they were conclusory. The ALJ first rejected Dr. Patamia's opinions for being "extreme" compared to Plaintiff's self-reported activities. AR 19. An ALJ may discount a doctor's findings if those findings appear inconsistent with a plaintiff's daily activities. *See Rollins v. Massanari*,

261 F.3d 853, 856 (9th Cir. 2001). Nonetheless, an ALJ cannot use a conclusory statement to reject a doctor's findings. *See Embrey*, 849 F.2d at 421-22. As the Ninth Circuit has stated:

> To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than offer [her] conclusions. [She] must set forth [her] own interpretations and explain why they, rather than the doctors', are correct.

*Id.* (internal footnote omitted).

Here, the ALJ's assertion that Dr. Patamia's findings were inconsistent with Plaintiff's activities was conclusory because the ALJ failed to explain how Plaintiff's ability to do these household activities contradicts Dr. Patamia's findings regarding Plaintiff's ability to conduct work-related activities. *See* AR 19. Hence, the ALJ's conclusory statement was not a specific, legitimate reason, supported by substantial evidence, to discount Dr. Patamia's opinion. *See Embrey*, 849 F.2d at 422 (an ALJ cannot merely state facts she claims "point toward an adverse conclusion and make[] no effort to relate any of these objective factors to any of the specific medical opinions and findings she rejects").

Second, the ALJ gave "limited weight" to Dr. Patamia's "one-time evaluation form" in comparison to Dr. Patamia's clinic notes. AR 19. The ALJ's decision to give less weight to Dr. Patamia's evaluation form than the clinic notes implies that these items are inconsistent. An ALJ may reject an opinion which is inadequately supported by the record. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Here, however, the ALJ provided no reasoning regarding why Dr. Patamia's treatment notes should be accorded greater weight than the evaluation forms. *See* AR 19. The ALJ also failed to explain how Dr. Patamia's opinions in the evaluation form differ from his clinic notes. *See* AR 19. Thus, the ALJ's conclusory decision to give less weight to Dr. Patamia's evaluation form because the form was inconsistent with his

clinic notes was not a specific, legitimate reason to reject this doctor's opinion. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) ("the agency [must] set forth the reasoning behind its decisions in a way that allows for meaningful review").

Third, the ALJ rejected Dr. Patamia's opinion because he diagnosed Plaintiff with body dysmorphic disorder based on Plaintiff's complaints made at a visit after treatment ended and for the purpose of determining SSI eligibility. AR 19. An ALJ may reject a physician's opinion "if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (quoting *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999)). Yet here, the ALJ once again provided vague, conclusory reasons to reject Dr. Patamia's opinion. Specifically, the ALJ failed to explain how the fact that this diagnosis was made after Plaintiff's last treatment or was made in the context of SSI eligibility undermines that diagnosis. *See* AR 19. Hence, the ALJ's conclusory statement was not a specific, legitimate reason to reject Dr. Patamia's opinion. *See Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) (the ALJ must "build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings").

Furthermore, the ALJ's assertion that this diagnosis came after Plaintiff's treatment with Dr. Patamia ended is not supported by substantial evidence. Indeed, the administrative record contains treatment records from Plaintiff's visit with Dr. Patamia on July 21, 2015 – less one month prior to the August 10, 2015 administrative hearing. *See* AR 462-63. Additionally, Plaintiff indicated at the hearing that she still sees Dr. Patamia for treatment. AR 30, 32-33. Thus, the ALJ's rejection of this diagnosis on the basis that it came after treatment with Dr. Patamia ended is not supported by substantial evidence.

The Court also notes that although the ALJ said Plaintiff's diagnosis of body dysmorphic disorder was based on Plaintiff's self-reports, the report containing this diagnosis does not say it was based on self-reports. *See* AR 449-50, 465-66. Moreover, even if this diagnosis was based on Plaintiff's self-reports, this would not be a proper reason to reject Dr. Patamia's opinion, as psychiatric diagnoses "will always depend in part on the patient's self-report." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). Because "the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness," this was not a specific, legitimate reason to reject Dr. Patamia's opinion under these circumstances. *See id.* In sum, the ALJ's rejection of Dr. Patamia's body dysmorphic syndrome diagnosis was error because the ALJ's reasoning was conclusory and not supported by substantial evidence. If the ALJ intends to reject Dr. Patamia's findings on remand, she must provide specific, non-conclusory reasons for doing so.

For the above stated reasons, the Court finds the ALJ has not provided specific and legitimate reasons, supported by substantial evidence, to reject Dr. Patamia's opinion. Accordingly, the ALJ erred.

"[H]armless error principles apply in the Social Security context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless, however, only if it is not prejudicial to the claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see also Molina*, 674 F.3d at 1115. The determination as to whether an error is harmless requires a "case-specific application of judgment" by the reviewing court, based on an examination of the record made "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Molina*, 674 F.3d at 1118-1119 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009)).

Had the ALJ properly considered all of Dr. Patamia's opined limitations, the RFC and hypothetical questions posed to the vocational expert ("VE") may have included additional limitations. For example, the RFC and hypothetical questions may have included the limitations that Plaintiff could not sustain an ordinary routine without special supervision, complete a normal workday or workweek without interruptions from psychological symptoms, or deal with normal work stress. The RFC and hypothetical questions may have also included the limitation that Plaintiff would miss, on average, more than four days of work per month due to her impairments and treatment. Thus, the ALJ's failure to properly consider Dr. Patamia's opinion is not harmless and requires reversal.

B. Dr. Jorgenson

Plaintiff also asserts the ALJ did not provide specific and legitimate reasons for rejecting part of the opinion by examining physician, Dr. Jorgenson. Dkt. 11, pp. 9-11.

Dr. Jorgenson is a medical doctor with a psychiatry specialty. *See* AR 319. Dr. Jorgenson conducted a comprehensive psychiatric evaluation of Plaintiff, which included a mental status examination and review of Plaintiff's health and family history. Dkt. 314-19. After the evaluation, Dr. Jorgenson diagnosed Plaintiff with social phobia with panic attacks, body dysmorphic disorder, generalized anxiety disorder, and major depressive disorder. AR 318. Dr. Jorgenson opined Plaintiff could perform simple and repetitive tasks and accept instructions from supervisors, although "she would have difficulty interacting with coworkers and the public." AR 318. Additionally, Dr. Jorgenson found Plaintiff "could not maintain regular attendance in the workplace because of her lack of sleep schedule and avoidance of the workplace" due to anxiety. AR 319. Similarly, Dr. Jorgenson determined Plaintiff "could not perform a normal workweek without moderate interruptions from her psychiatric condition." AR 319. Dr. Jorgenson

| 1  | concluded Plaintiff "could not deal well with the usual stress encountered in a competitive work |
| 2  | environment." AR 319. |

The ALJ discussed some of Dr. Jorgenson's findings, and then stated:

> These limitations, to the extent consistent with the established diagnosis of anxiety disorders and affective disorders, are included in the RFC. (1) However, the portion of Dr. Jorgenson's opinion that the claimant "could not maintain regular attendance in the workplace" and "could not perform a normal workweek" are not adopted in view of the claimant's credibility issues discussed throughout this decision, (2) including Dr. Derksen-Schrock's specific "[c]oncern for malingering given ongoing missed work despite no findings to suggest a specific medical illness." (2F/28) Overall, Dr. Jorgenson's opinions are accorded some weight only.

AR 19 (numbering added).

First, ALJ gave "some weight" to Dr. Jorgenson's opinion due to concerns regarding Plaintiff's credibility. AR 19. As previously stated, an ALJ may reject a physician's opinion if it is largely based "a claimant's self-reports that have been properly discounted as incredible." *Tommasetti*, 533 F.3d at 1041. However, an ALJ cannot reject "an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations." *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008) (citing *Edlun v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001)). Moreover, mental status evaluations are "objective measures" which "cannot be discounted as a self-report." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017).

In this case, the ALJ rejected part of Dr. Jorgenson's opinion due to concerns regarding Plaintiff's credibility, even though Dr. Jorgenson herself did not question Plaintiff's credibility. *See* AR 314-19. Dr. Jorgenson also conducted a mental status examination. *See* AR 316-17. Hence, because Dr. Jorgenson did not question Plaintiff's credibility and conducted a mental

status examination, her opinion cannot be rejected on the basis of Plaintiff's credibility. *See Buck*, 869 F.3d at 1049 (ALJ erred when he rejected a physician's opinion for relying on plaintiff's self-reports where the doctor also conducted a mental status evaluation and clinical interview); *see also Ryan*, 528 F.3d at 1199-1200 (ALJ improperly rejected a physician's opinion based on plaintiff's credibility where "nothing in the record" suggested the doctor disbelieved plaintiff's reports or relied more heavily on plaintiff's reports than his own clinical observations). As such, this was not a specific, legitimate reason to reject Dr. Jorgenson's opinion under these circumstances.

Second, the ALJ rejected part of Dr. Jorgenson's opinion in light of the malingering concerns expressed by Dr. Derksen-Schrock. AR 19. As stated above, a physician's contradicted opinion can only be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31. The fact that Dr. Jorgenson's opinion appeared inconsistent with Dr. Derksen-Schrock's concern for malingering shifts the standard of review from clear and convincing to specific and legitimate reasons, but the ALJ must still provide a proper reason to give Dr. Derksen-Schrock greater weight than Dr. Jorgenson. Instead, the ALJ summarily concluded Dr. Derksen-Schrock's opinion controls without explaining why it should be given greater weight. This was therefore not a specific, legitimate reason to give only some weight to Dr. Jorgenson's opinion.

Furthermore, a review of Dr. Derksen-Schrock's records reveals the doctor did not have the relevant malingering concerns purported by the ALJ. In full, Dr. Derksen-Schrock stated he had "[c]oncern for malingering given ongoing missed work despite no findings to suggest a specific medical illness, *other than psychiatric concerns as noted above*." AR 347-48 (emphasis added). Hence, Dr. Derksen-Schrock did not have malingering concerns for Plaintiff's

psychiatric conditions, which were the focus of Dr. Jorgenson's evaluation and report. *See* AR 347-48, 314-19. Accordingly, the ALJ failed to provide a specific and legitimate reason, supported by substantial evidence, to reject Dr. Jorgenson's opinions.

For the above stated reasons, the Court concludes the ALJ failed to provide specific, legitimate reasons supported by substantial evidence for giving only some weight to Dr. Jorgenson's opinions. Thus, the ALJ erred. Had the ALJ properly considered Dr. Jorgenson's opinion, the RFC and the hypothetical questions posed to the vocational expert may have included additional limitations, such as Plaintiff's inability to maintain regular workplace attendance or perform a normal workweek. As the ultimate disability decision may have changed, the ALJ's error is not harmless. *See Molina*, 674 F.3d at 1115.

**II.     Whether the ALJ assigned proper weight to the non-examining consultant.**

Plaintiff next argues the ALJ erred in assigning significant weight to the opinion of non-examining state-agency consultant, Dr. Robinson. Dkt. 11, pp. 12-13. A non-examining medical source may constitute substantial evidence when it is consistent with other independent evidence in the record. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). However, "[i]n order to discount the opinion of an examining physician in favor of the opinion of a nonexamining medical advisor, the ALJ must set forth specific, legitimate reasons that are supported by substantial evidence in the record." *Nguyen v. Chater*, 100 F.3d 1462, 1466 (9th Cir. 1996) (*citing Lester*, 81 F.3d at 831). As the ALJ did not provide specific and legitimate reasons for discounting the opinions of Drs. Patamia and Jorgenson, she erred when she discounted these opinions in favor of the opinion of non-examining medical consultant Dr. Robinson. Therefore, on remand, the ALJ must reevaluate Dr. Robinson's opinions as well.

### III. Whether the ALJ properly considered Plaintiff's testimony.

Plaintiff further asserts the ALJ failed to provide clear and convincing reasons to reject her testimony regarding her symptoms and limitations. Dkt. 11, pp. 13-17. The Court concluded the ALJ committed harmful error in assessing the medical opinion evidence. *See* Section I, *supra*. Because the ALJ's reconsideration of the medical opinion evidence may impact her assessment of Plaintiff's subjective testimony, the ALJ must reconsider Plaintiff's subjective testimony on remand.

The Court also notes, on March 16, 2016, the Social Security Administration changed the way it analyzes a claimant's credibility. *See* SSR 16-3p, 2016 WL 1119029 (2016). The term "credibility" will no longer be used. *Id*. at *1. Further, symptom evaluation is no longer an examination of a claimant's character. *See id*. at *10 ("adjudicators will not assess an individual's overall character or truthfulness"). The ALJ's decision here – dated September 25, 2015 – was issued before SSR 16-3p became effective. Therefore, the ALJ did not err by failing to apply SSR 16-3p. However, on remand, the ALJ is directed to apply SSR 16-3p when evaluating Plaintiff's subjective symptom testimony.

### IV. Whether the ALJ met her burden at Step Five of the sequential evaluation process.

Plaintiff also argues the ALJ failed to meet her burden at Step Five because the RFC and hypothetical questions posed to the VE did not contain all of Plaintiff's functional limitations. Dkt. 11, p. 13. The Court concluded the ALJ committed harmful error when she failed to properly consider the medical opinion evidence. *See* Section I, *supra*. Accordingly, the ALJ must reassess the RFC on remand. *See* SSR 96-8p, 1996 WL 374184 (1996) (an RFC "must always consider and address medical source opinions"); *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) ("an RFC that fails to take into account a claimant's limitations is

defective"). As the ALJ must reassess Plaintiff's RFC on remand, she must also reevaluate the findings at Step 5 to determine whether there are jobs existing in significant numbers in the national economy Plaintiff can perform in light of the RFC. *See Watson v. Astrue*, 2010 WL 4269545, at *5 (C.D. Cal. Oct. 22, 2010) (finding the RFC and hypothetical questions posed to the vocational expert defective when the ALJ did not properly consider two doctors' findings).

**V. Whether the case should be remanded for an immediate award of benefits**.

Lastly, Plaintiff maintains this matter should be remanded with a direction to award benefits. Dkt. 11, pp. 17-18.

The Court may remand a case "either for additional evidence and findings or to award benefits." *Smolen*, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). However, the Ninth Circuit created a "test for determining when evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d at 1292.

The Court has determined, on remand, the ALJ must reevaluate this entire matter properly considering the medical opinion evidence, Plaintiff's testimony, and the Step Five findings. Therefore, remand for further administrative proceedings is appropriate.

## CONCLUSION

Based on the foregoing reasons, the Court hereby finds the ALJ improperly concluded Plaintiff was not disabled. Accordingly, Defendant's decision to deny benefits is reversed and this matter is remanded for further administrative proceedings in accordance with the findings contained herein.

Dated this 27th day of October, 2017.

*David W. Christel*
David W. Christel
United States Magistrate Judge